No. 23-3793

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

───────────────

GAVIN NEWSOM, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF CALIFORNIA AND IN HIS PERSONAL CAPACITY, ET AL.,
*Defendants-Appellants*,

v.

B&L PRODUCTIONS, D/B/A CROSSROADS OF THE WEST, ET AL.,
*Plaintiffs-Appellees*.

───────────────

## On Appeal from the United States District Court
## for the Central District of California
No. 8:22-cv-01518 JWH (JDEx)
The Honorable John W. Holcomb, Judge

───────────────

## STATE APPELLANTS' REPLY BRIEF

───────────────

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE
LARA HADDAD
Supervising Deputy Attorneys General

NICOLE J. KAU
Deputy Attorney General
State Bar No. 292026
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6220
  Fax: (916) 731-2119
  Email: Nicole.Kau@doj.ca.gov
*Attorneys for Defendants-Appellants*
*Governor Gavin Newsom, Attorney*
*General Rob Bonta, Secretary Karen*
*Ross, and 32nd District Agricultural*
*Association*

February 6, 2024

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................. 1

Argument ..................................................................................... 3

I.    Plaintiffs Are Not Likely to Succeed on the Merits ....................... 3

    A.    The District Court's Decision to Grant a Preliminary Injunction Is Reviewed for an Abuse of Discretion, but Questions of Law Are Reviewed De Novo ...................................................... 3

    B.    Plaintiffs Are Not Likely to Succeed on the Merits of Their First Amendment Claim ..................................................... 4

        1.    SB 264 and SB 915 Do Not Regulate Speech or Expressive Conduct ................................................ 4

        2.    SB 264 and SB 915 Pass Constitutional Scrutiny ...................... 5

            a.    The Challenged Laws Satisfy Rational Basis Review ................................................................ 6

            b.    The Challenged Laws Do Not Regulate Commercial Speech, and Even If They Did, They Would Satisfy Intermediate Scrutiny ............................. 6

            c.    The Challenged Laws Meet the Limited Public Forum Test ............................................................ 11

    C.    Plaintiffs Are Not Likely to Succeed on the Merits of Their Equal Protection Claim .................................................. 15

    D.    Plaintiffs Are Not Likely to Succeed on the Merits of Their Second Amendment Claim ............................................... 15

        1.    The Challenged Laws Do Not Regulate Conduct Covered by the Plain Text of the Second Amendment ......................... 16

        2.    The Challenged Laws Are Presumptively Lawful Qualifications on the Commercial Sale of Firearms ................. 19

        3.    The Challenged Laws Are Consistent with Historical Firearm Regulations ............................................... 19

            a.    The Relevant Historical Tradition is Not Limited to the Founding Era ............................................ 20

**TABLE OF CONTENTS**
**(continued)**

Page

      b.    The Government Has Long Regulated Conduct on Its Own Property..........................................................21

      c.    The Government Has Historically Regulated Firearms Commerce to Promote Public Safety ..............22

      d.    The Supreme Court has Recognized Governmental Authority to Regulate Firearms in Sensitive Places.......25

II.    Plaintiffs Have Not Satisfied the Other Preliminary Injunction Factors.......26

Conclusion ................................................................................28

Certification of Word Count ....................................................29

# TABLE OF AUTHORITIES

**Page**

CASES

*Antonyuk v. Chiumento*
89 F.4th 271 (2d Cir. 2023) ...................................................................20

*B&L Prods., Inc. v. 22nd Dist. Agric. Ass'n*
394 F. Supp. 3d 1226 (S.D. Cal. 2019)....................................................4

*Bd. of Trs. of State Univ. of N.Y. v. Fox*
492 U.S. 469 (1989)............................................................................8, 9

*Boardman v. Inslee*
978 F.3d 1092 (9th Cir. 2020) ...............................................................13

*Bonidy v. U.S. Postal Service*
790 F.3d 1121 (10th Cir. 2015) ...............................................21, 22, 26

*Bottinelli v. Salazar*
929 F.3d 1196 (9th Cir. 2019) ...............................................................14

*Camenzind v. California Exposition and State Fair*
84 F.4th 1102 (9th Cir. 2023) ...............................................................12

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*
447 U.S. 557 (1980)................................................................................9

*Christian Legal Soc'y v. Martinez*
561 U.S. 661 (2010)..............................................................................13

*Christopher v. Ramsey Cty.*
621 F. Supp. 3d 972 (D. Minn. Aug. 12, 2022).....................................26

*Clark v. Cmty. for Creative Non-Violence*
468 U.S. 288 (1984)................................................................................4

*District of Columbia v. Heller*
554 U.S. 570 (2008).......................................................18, 20, 21, 25

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Env't Prot. Info. Ctr. v. Carlson*
    968 F.3d 985 (9th Cir. 2020) .................................................3

*Fraihat v. U.S. Immigration and Customs Enforcement*
    16 F.4th 613 .......................................................................3

*Gazzola v. Hochul*
    88 F.4th 186 (2d Cir. 2023) ...............................................18

*Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*
    452 U.S. 640 (1981).....................................................11, 12

*Interpipe Contracting, Inc. v. Becerra*
    898 F.3d 879 (9th Cir. 2018) .............................................13

*Lopez v. Brewer*
    680 F.3d 1068 (9th Cir. 2012) .............................................3

*Madsen v. Women's Health Ctr., Inc.*
    512 U.S. 753 (1994)............................................................13

*Maryland v. King*
    567 U.S. 1301 (2012).........................................................27

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
    597 U.S. 1 (2022)........................................................passim

*Nordyke v. King*
    319 F.3d 1181 (9th Cir. 2003) ...............................4, 5, 7, 8

*Nordyke v. King*
    563 F.3d 439 (9th Cir. 2009) .............................................26

*Nordyke v. Santa Clara County*
    110 F.3d 707 (9th Cir. 1997) .......................................passim

*Norfolk & W. Ry. Co. v. Sims*
    191 U.S. 441 (1903).............................................................7

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Oakland Tactical Supply, LLC v. Howell Twp.*
No. 18-cv-13443, 2023 WL 2074298 (E.D. Mich. Feb. 17, 2023) ................... 17

*OSU Student All. v. Ray*
699 F.3d 1053 (9th Cir. 2012) ............................................................. 15

*Retail Digit. Network, LLC v. Prieto*
861 F.3d 839 (9th Cir. 2017) ............................................................... 6

*Romero-Ochoa v. Holder*
712 F.3d 1328 (9th Cir. 2013) .............................................................. 6

*Seattle Mideast Awareness Campaign v. King Cty.*
781 F.3d 489 (9th Cir. 2015) .......................................................... 11, 12

*Sorrell v. IMS Health Inc.*
564 U.S. 552 (2011) ........................................................................... 5

*Teixeira v. County of Alameda*
873 F.3d 670 (9th Cir. 2017) ....................................................... 17, 18, 24

*Close v. Sotheby's, Inc.*
894 F.3d 1061 (9th Cir. 2018) ............................................................ 18

*Tingley v. Ferguson*
47 F.4th 1055 (9th Cir. 2022) ............................................................ 14

*U.S. v. Doe*
136 F.3d 631 (9th Cir. 1998) ............................................................. 14

*United States v. Bartucci*
658 F. Supp. 3d 794 (E.D. Cal. 2023) ................................................... 24

*United States v. Class*
930 F.3d 460 (D.C. Cir. 2019) ...................................................... 21, 22, 26

*United States v. Flores*
2023 WL 361868 (S.D. Tex. Jan. 23, 2023) ............................................ 18

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Kittson*
2023 WL 5015812 (D. Or. Aug. 7, 2023) ..........................................................18

*United States v. Miller*
982 F.3d 412 (6th Cir. 2020) ...................................................................14

*United States v. O'Brien*
391 U.S. 367 (1968)..........................................................................14

*United States v. Reyna*
2022 WL 17714376 (N.D. Ind. Dec. 15, 2022)............................................16, 17

*United States v. Tilotta*
2022 WL 3924282 (S.D. Cal. Aug. 30, 2022)...............................................18

*Wright v. Incline Village Gen. Improvement Dist.*
665 F.3d 1128 (9th Cir. 2011) ...............................................................12

**STATUTES**

California Penal Code § 27340(b) ............................................................26

1825 N.H. Laws 74 § 5 .....................................................................22

1891 N.H. Laws 117 § 7 ....................................................................22

**CONSTITUTIONAL PROVISIONS**

First Amendment............................................................................*passim*

Second Amendment .........................................................................*passim*

**OTHER AUTHORITIES**

Assembly Bill 893, 2019-2020 Reg. Sess. (Cal. 2020) ....................................*passim*

Jacob D. Charles, *On Sordid Sources in Second Amendment
Litigation*, Stan. L. Rev Online 30 (2023)................................................24

Senate Bill 264, 2020-2021 Reg. Sess. (Cal. 2021)........................................*passim*

## TABLE OF AUTHORITIES
### (continued)

**Page**

Senate Bill 915, 2021-2022 Reg. Sess. (Cal. 2022).........................................*passim*

# INTRODUCTION

California Senate Bills 264 and 915 prohibit only the sale of firearms, ammunition, and precursor parts at the Orange County Fair & Event Center (the Fairgrounds) and all other state property. They do not enact a "ban" on gun shows, despite Plaintiffs' repeated assertions otherwise. When these laws are in effect, Plaintiffs and the public may continue to host and participate in gun shows, share in "gun culture," exchange "literature and information," and engage in other commerce at the shows. 2-ER-264, 265. Indeed, the operative Complaint states that most gun show vendors *do not* sell guns or ammunition. 2-ER-265 (over 60 percent of vendors sell other goods or services exclusively). The laws merely restrict commercial sales of firearms and ammunition on state property, while allowing those commercial transactions to occur at any of the brick and mortar shops licensed to conduct firearms and ammunition sales.

SB 264 and 915 impose no restrictions on expressive activity or the right to bear arms. Opening Brief (OB) 16-20. Plaintiffs nonetheless continue to insist that these laws violate the First Amendment, equal protection, and Second Amendment. With respect to the First Amendment, Plaintiffs contend that SB 264 and 915 regulate commercial speech, but the challenged laws in no way prohibit offers for sale or any other speech, and thus do not even implicate the First Amendment. But even if this Court were to assume that Plaintiffs' First

1

Amendment rights were implicated, SB 264 and 915 would survive any level of scrutiny because they address vital public safety concerns. Plaintiffs' equal protection claim, which is premised on their deficient First Amendment claim and relies on conclusory statements that unconstitutional animus prompted SB 264 and SB 915, similarly fails.

Nor do SB 264 and SB 915 violate the Second Amendment. They are presumptively lawful regulations on commerce in firearms. Under this Court precedents, there is no freestanding Second Amendment right to sell firearms, ammunition, or precursor parts, much less on state property, and plaintiffs have identified no authority—textual or otherwise—for their contrary argument. Even if the sales of these items on state property were to fall within plain text of the Second Amendment, SB 264 and 915 are consistent with several traditions of firearm regulation in this country.

The equitable considerations also favor the State. Plaintiffs remain free to host and participate in gun shows and to engage in a range of expressive activity at those shows. And because they are unlikely to prevail on their constitutional claims, they cannot establish that they have suffered irreparable harm on that basis. The government, on the other hand, has an unmistakable interest in the implementation of SB 264 and SB 915 to promote public safety by reducing illegal firearms and ammunition trafficking and gun violence.

2

This Court should reverse the district court's order granting a preliminary injunction.

## ARGUMENT

I. **PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS**

A. **The District Court's Decision to Grant a Preliminary Injunction Is Reviewed for an Abuse of Discretion, but Questions of Law Are Reviewed De Novo**

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). In characterizing the standard of review, Plaintiffs mistakenly assert that the State Defendants' opening brief "implied[ly] admi[tted] that the district court's findings of fact are undisputed[.]" Answering Brief (AB) 11. Not so. The State Defendants merely observed that while the determination of whether a preliminary injunction was properly issued is reviewed for abuse of discretion, questions of law are reviewed de novo. *See* OB 15 (citing *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1103 (9th Cir. 2016)). "The district court's interpretation of the underlying legal principles . . . is subject to de novo review and a district court abuses its discretion when it makes an error of law." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020) (internal quotations omitted). The district court's factual findings are reviewed for clear error. *Fraihat v. U.S. Immigration and Customs Enforcement*, 16 F.4th 613. 635 (9th Cir. 2021).

3

### B. Plaintiffs Are Not Likely to Succeed on the Merits of Their First Amendment Claim

#### 1. SB 264 and SB 915 Do Not Regulate Speech or Expressive Conduct

As a threshold matter, Plaintiffs have not met their burden to show that the First Amendment is implicated because SB 264 and SB 915 do not regulate speech. OB 16-20; *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). Plaintiffs allege that SB 264 and SB 915 "censor" "'pure speech,'" AB 11, but the challenged laws do no such thing. The laws do not prohibit gun shows or infringe on the "exchange [of] information regarding hunting, target practice, firearm training and safety, gunsmithing, and political advocacy." 1-ER-006. As discussed at length in State Defendants' opening brief, OB 17, SB 264 and SB 915 do not prohibit vendors of firearms and ammunition from advertising and promoting their products at gun shows on state property. This is in direct contrast to the moratorium on gun shows that was held by a district court to be unconstitutional for restricting speech, because it restricted the "communicative content" of firearms and related issues. *B&L Prods., Inc. v. 22nd Dist. Agric. Ass'n*, 394 F. Supp. 3d 1226, 1244 (S.D. Cal. 2019).

As this Court has held, "'the act of exchanging money for a gun is not "speech" within the meaning of the First Amendment.'" *Nordyke v. Santa Clara County*, 110 F.3d 707, 710 (9th Cir. 1997) (*Nordyke 1997*); *Nordyke v. King*, 319

F.3d 1181, 1191 (9th Cir. 2003) (*Nordyke 2003*) (citing *Nordyke 1997*).  Since SB 264 and SB 915 prohibit only the sale of firearms, ammunition, and precursor parts, and such transactions are not speech, the challenged laws do not implicate the First Amendment.

Plaintiffs broadly assert that the challenged laws "effectively" ban gun shows, AB 5, but as the State Defendants demonstrate, *see* OB 18-19, they do not.  A restriction on non-speech conduct—here, firearms and ammunition transactions—does not infringe upon Plaintiffs' expressive activity just because it might impact the profitability of gun shows.  *See Nordyke 2003*, 319 F.3d at 1191.  Nor does Plaintiffs' right to support "gun culture" entitle them to be exempt from a non-speech restriction—whether it be fire-code restrictions on maximum capacity, business taxes, or a firearm sales prohibition.  *Id.*; *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).  The State may limit certain commercial transactions on its property for public safety purposes without infringing upon Plaintiffs' First Amendment rights.

### 2.    SB 264 and SB 915 Pass Constitutional Scrutiny

Because SB 264 and SB 915 do not regulate speech, they are subject to and readily satisfy rational basis review.  In any event, they also satisfy any other applicable review standard, including the *Central Hudson* test for commercial

speech regulations and the reasonableness standard for regulations of speech in a limited public forum.

### a. The Challenged Laws Satisfy Rational Basis Review

SB 264 and SB 915 are subject to rational basis review. *See Retail Digit. Network, LLC v. Prieto*, 861 F.3d 839, 847 (9th Cir. 2017) (en banc). SB 264's legislative findings set forth the Legislature's public safety concerns with illegal firearms commerce and transfers at gun shows, including trafficking of unlawful firearms and sales to prohibited persons. SB 264, § 1(e) (Add-011). SB 915's legislative history mirrors these findings, and AB 893's legislative findings further described over a dozen recorded crimes at the Del Mar Fairgrounds alone. *See* OB 21. Because California has a "substantial interest" in preventing and mitigating gun violence arising from unlawful sales," *see Nordyke 1997*, 110 F.3d at 713— and at the least, there were "plausible reasons" for enacting the challenged laws— the "inquiry is at an end." *Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013) (citation omitted).

### b. The Challenged Laws Do Not Regulate Commercial Speech, and Even If They Did, They Would Satisfy Intermediate Scrutiny

Plaintiffs erroneously assert that SB 264 and SB 915 restrict commercial speech, reiterating the district court's flawed reasoning that because "[i]t is illegal to simultaneously exchange money for a firearm" at a gun show, AB 19, the

challenged laws "'implicate commercial speech by restricting the sale of otherwise legal firearms,'" AB 20 (citing 1-ER-016).  But it is irrelevant to the First Amendment analysis whether the exchange of a firearm would occur if sales of these products were allowed on state property.[1]  The sale itself is not speech, *see Nordyke 2003*, 319 F.3d at 1191, and the challenged laws do not prohibit offers for sale—which puts these laws in stark contrast to the improper addendum in the lease agreement in *Nordyke 1997*, which prohibited the "offering for sale" of firearms at gun shows, even though such sales were otherwise lawful.

Plaintiffs rely on *Norfolk & W. Ry. Co. v. Sims*, 191 U.S. 441, 447 (1903), to establish an omnibus definition of "sale" to support their argument that the challenged laws amount to a prohibition on speech, AB 19, but that case is inapposite.  *Norfolk* addressed a Commerce Clause claim, not a First Amendment claim; the Court there determined that the "substance of the sale is the agreement to sell and its acceptance," but that in certain cases, "the sale is not complete until delivery, and sometimes not until payment." *Id*.  *Norfolk*'s consideration of what activities implicate the Commerce Clause does not compel a conclusion that a prohibition on the sale of firearms, ammunition, and precursor parts on state

---

[1] And the district court failed to differentiate firearm sales, which have a waiting period, from ammunition sales, which lack a waiting period.  A person can pay for, and walk away with, ammunition at a gun show on state property while SB 264 and SB 915 are enjoined.

property necessarily regulates commercial speech. Plaintiffs seek to impose a definition of "sale" that is inapplicable here.

Plaintiffs also argue that counsel for the State Defendants purportedly made concessions implying that the challenged laws regulate commercial speech. AB 20. That is wrong. Counsel for the State Defendants merely acknowledged that under the challenged laws, "vendors are allowed to advertise," and the laws only prohibit the specific sales themselves, which include an offer and acceptance, a commercial transaction. *See* 2-ER-043, 046.

To the extent that Plaintiffs argue that the sale of firearms at gun shows is "pure speech" (AB 11-20), they must show that the commercial transaction is "inextricably intertwined" with non-commercial speech, and thus, entitled to non-commercial speech protections. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989); *Hunt*, 638 F.3d at 715-716. But as discussed above and in the opening brief (OB 22-25), the sale of a firearm or ammunition is not commercial speech; in fact, it is not speech at all. *Nordyke 1997*, 110 F.3d at 710; *see also Nordyke 2003*, 319 F.3d at 1189. The challenged laws do not implicate any commercial speech with which the non-commercial speech may intertwine.

Moreover, this intertwined theory does not apply when "the two components of speech can be easily separated." *Hunt*, 638 F.3d at 715. Courts have repeatedly rejected the argument that the *sale* of a regulated item is inextricably intertwined

with *speech pertaining to* that item. *Id.* at 716–17 (the plaintiffs' sale of shea butter and incense was not inextricably intertwined with the spiritual messages they incorporated into their sales pitches); *see also Fox*, 492 U.S. at 474 (prohibiting the sale of housewares in a college dorm did not "prevent[] the speaker from conveying, or the audience from hearing" non-commercial speech about home economics). "[T]here is nothing whatever 'inextricable' about the noncommercial aspects of these presentations" that requires them to be combined with commercial messages. *Fox*, 492 U.S. at 474. The same is true here. Far from it being "impossible" (*id.*) to separate speech from conduct, Plaintiffs remain free to express their views about "gun culture" even if they cannot sell or purchase firearms at gun shows on state property under SB 264 and 915. SB 264 and SB 915 do not prohibit offers for sale, discussions about product availability, or conversations about product suitability for specified uses.

Even if this Court were to hold or assume that SB 264 and SB 915 regulate commercial speech, they would meet *Central Hudson*'s intermediate scrutiny standard.[2] *See* OB 24-25. Plaintiffs contend that California does not have a

---

[2] Plaintiffs allege that there is no basis for asserting that commercial speech is of "lower value" than noncommercial speech, AB 11, but the Supreme Court has unequivocally held that "[t]he Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562–

substantial interest here because, in their view, SB 264 and SB 915 are not supported by any "admissible evidence that California gun shows are the source of 'grave danger to the community.'" AB 21. This argument fails. The Ninth Circuit has held that "government at all levels has a substantial interest in protecting the people from those who acquire guns illegally and use them to commit crimes resulting in injury or death of their victims." *Nordyke 1997*, 110 F.3d at 713. Here, the restrictions directly advance that interest by prohibiting only transactions that are associated with illegal commerce at gun shows. While Plaintiffs claim that their events are "largely incident-free," AB 24, SB 264's legislative findings note several concerning incidents at gun shows, such as an official vendor accused of trafficking illegal firearms, sales of firearms to individuals prohibited from possessing them, and illegal importation of large-capacity magazines. *See* OB 21. The legislative findings for AB 893 add that from 2013 to 2017, there were 14 crimes recorded at gun shows held by Plaintiff B&L at the Del Mar Fairgrounds in San Diego County. *Id*. And the California Department of Justice Armed and Prohibited Persons System Reports from 2021 and 2022 also document evidence of illegal firearms commerce at gun shows in California. OB 21-22 n. 1.

---

63 (1980). Plaintiffs appear to apply a strict scrutiny-type analysis, *see* AB 21–22, but that is not the applicable standard.

10

These are not "vague claim[s] of dangerous incidents," or "vague references to a handful of non-violent crimes," as Plaintiffs assert, AB 22, but rather specific incidents of unlawful activity that support the Legislature's response. SB 264 and SB 915 address particular risks created by a unique setting that lends itself to illegal transactions—the gathering of firearm and ammunition vendors at an event held in a large physical space where attendees significantly outnumber any law enforcement presence. *See* OB 25. As this Court has recognized, "[s]ubstantial, effective, and carefully drafted legislative acts to improve public safety generally, which may curb specific commercial speech, . . . easily satisfy the third and fourth parts of the *Central Hudson* test." *Nordyke 1997*, 110 F.3d at 713.

### c. The Challenged Laws Meet the Limited Public Forum Test

Plaintiffs also contend that "at minimum," the state property regulated by SB 264 and SB 915 is a designated public forum, where content-based speech prohibitions must survive strict scrutiny. AB 14. Yet the Supreme Court has held that a fair on state property is a limited public forum. *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981) ("Minnesota State Fair is a limited public forum in that it exists to provide a means for a great number of exhibitors temporarily to present their products or views . . . ."); *see also Seattle Mideast Awareness Campaign v. King Cty.*, 781 F.3d 489, 497 (9th Cir. 2015) ("[I]f the property is used primarily as part of a government-run commercial

11

enterprise, and the expressive activities the government permits are only incidental to that use, that fact tends to support finding a limited public forum."); *Camenzind v. California Exposition and State Fair*, 84 F.4th 1102, 1113–14 (9th Cir. 2023) ("The interior, ticketed portion of [the Cal Expo] fairgrounds is a nonpublic forum under the First Amendment . . . ."). Gun shows, like fairs, allow vendors to temporarily present their products and views, *see* 2-ER-264, 265; they are "limited to use by certain groups or dedicated solely to the discussion of certain subjects," *Wright v. Incline Village Gen. Improvement Dist.*, 665 F.3d 1128, 1134 (9th Cir. 2011) (internal quotations omitted). In *Wright*, this Court held that beaches in a certain district were, at most, a limited public forum because access to the beaches required showing identification to a security guard at a kiosk or gate. *Id.* at 1135-38. Here, use of the Fairgrounds for gun shows is only permitted by contracting for available space temporarily for a certain period of time. The Fairgrounds is thus a limited public forum. *See Heffron*, 452 U.S. at 6513. Accordingly, "content-based restrictions are permissible, as long as they are reasonable and viewpoint neutral." *Seattle Mideast Awareness*, 781 F.3d at 496.

Plaintiffs allege that the challenged laws are viewpoint-discriminatory because they allegedly "treat[] gun shows differently from other events," such as "auto shows and home shows." AB 15. Yet "'[a] facially neutral statute . . . [with] a legitimate end is not discriminatory simply because it *affects* some groups more

12

than others.'" *Boardman v. Inslee*, 978 F.3d 1092, 1113 (9th Cir. 2020). "For example, 'an ordinance against outdoor fires' is legitimate even though it might affect anti-government protesters more than pro-government ones because only the former are likely to engage in the expressive activity of flag burning." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 900 (9th Cir. 2018) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992)) (finding regulation viewpoint neutral even though it applied only to entities with a certain viewpoint because it did not regulate the entities "based on" those views); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 (1994) ("[T]he fact that the injunction covered people with a particular viewpoint does not itself render the injunction content or viewpoint based."). Instead, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 695 (2010) (requirement that all student groups accept all comers, although affecting one religious group in particular, was viewpoint neutral). Here, the challenged laws are facially neutral and serve the purpose of reducing the risk of illegal firearms and ammunition commerce at gun shows on state property. Plaintiffs and the public are not proscribed from otherwise engaging in expressive activity at gun shows.

13

Plaintiffs also argue that SB 264 and SB 915 are viewpoint discriminatory because they are purportedly motivated by animus, pointing to a letter from Governor Newsom to the 22nd District Agricultural Association and Senator Min's testimony before the Senate Public Safety Committee.  AB 16.  Yet the plain language of the statutes governs the analysis, and here the challenged laws prohibit *only* the sale of firearms, ammunition, and precursor parts on state property—not gun shows themselves.[3]  *See Bottinelli v. Salazar*, 929 F.3d 1196, 1199 (9th Cir. 2019) (when interpreting a statute, the court begins with the plain text).  In this context and under these circumstances, remarks from an elected official cannot change the statute's plain meaning or scope, nor can they properly be attributed to "the legislative body as a whole."  *Tingley v. Ferguson*, 47 F.4th 1055, 1087 (9th Cir. 2022) (internal quotation marks omitted); *see also United States v. O'Brien*, 391 U.S. 367, 384 (1968).

---

[3] Plaintiffs assert that the district court's suggestion that the goal of the challenged laws is to "end gun shows in California," and subsequent conclusion that "Defendants are engaging in viewpoint discrimination," is an evidentiary finding to be reviewed for "clear error."  AB 17, quoting 1-ER-022-023.  But a district court's construction or interpretation of a statute is reviewed de novo.  *U.S. v. Doe*, 136 F.3d 631, 635 (9th Cir. 1998).  This includes interpretations of legislative intent and findings of "legislative fact," which themselves are legal issues subject to de novo review.  *See, e.g., United States v. Miller*, 982 F.3d 412, 430 (6th Cir. 2020).

### C. Plaintiffs Are Not Likely to Succeed on the Merits of Their Equal Protection Claim

Plaintiffs allege that the challenged laws violate the Equal Protection Clause because, in their view, "the government is motivated by animus toward a disfavored group." AB 47. As discussed above, SB 264 and SB 915 must be evaluated based on their plain language and expressions of intent in the legislative history—both of which indicate an intent to promote public safety by reducing the risk of illegal commerce at gun shows. *Ante*, Arg. I.B.2.a.-c. Because Plaintiffs' equal protection claim collapses into their First Amendment claim, *see OSU Student All. v. Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012), this claim also fails.

### D. Plaintiffs Are Not Likely to Succeed on the Merits of Their Second Amendment Claim

As the State Defendants established in the opening brief, SB 264 and SB 915 do not implicate the Second Amendment. OB 34–38. The plain text of the Second Amendment does not guarantee the right to sell firearms, much less on state property. But even if this Court were to assume or hold that Plaintiffs could show that the laws implicate conduct that is presumptively protected by the Second Amendment, the challenged laws are consistent with the text-and-history approach set forth in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 9 (2022).

**1.    The Challenged Laws Do Not Regulate Conduct Covered
by the Plain Text of the Second Amendment**

Plaintiffs fail to establish that the Second Amendment's plain text covers the proposed conduct here—selling firearms and ammunition on state property. Plaintiffs overgeneralize their proposed conduct, calling it the right to engage in "commerce in arms."  AB 26.  But "the regulated conduct must be defined specifically enough that it can meaningfully compare to the Second Amendment's plain text."  *United States v. Reyna*, 2022 WL 17714376, at *4 (N.D. Ind. Dec. 15, 2022).  The challenged law must inform the scope of the proposed conduct; otherwise, the Supreme Court's use of the qualifier "proposed" before "course of conduct" when describing the plain text analysis would be meaningless.  *Bruen*, 597 U.S. at 32.  This approach is consistent with the Supreme Court's observations that the Second Amendment is not a "regulatory straightjacket," *id.* at 30, and the right to bear arms is subject to reasonable limits, *id.* at 21–22; *id.* at 71–72 (Alito, J., concurring), including "laws imposing conditions and qualifications on the commercial sale of arms," *id.* at 79–81 (Kavanaugh, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)).

Plaintiffs' overly broad interpretation of the plain text analysis ignores what SB 264 and SB 915 actually prohibit—the sale of firearms, ammunition, and precursor parts at the Fairgrounds and other state property.  Plaintiffs' methodology would lead to absurd results; any regulation having any effect on

16

firearm purchases would be presumptively protected by the Second Amendment's plain text. For example, under Plaintiffs' approach, generally applicable zoning laws prohibiting retail sales in residential neighborhoods (including those of firearms), standard sales taxes, or laws requiring retailers to retain records of commercial sales would be said to have an effect on the "commerce of arms" and be said to cover presumptively protected conduct. *See Oakland Tactical Supply, LLC v. Howell Twp.*, No. 18-cv-13443, 2023 WL 2074298, at *3, n.4 (E.D. Mich. Feb. 17, 2023), *appeal docketed*, No. 23-1179 (6th Cir. Mar. 1, 2023) at *3 (defining the proposed conduct simply as "training with firearms" would lead to the "absurd result" that in future constitutional challenges "any proposed conduct touching on any type of firearms training would be presumptively protected by the plain text of the Second Amendment"). That is not the textual inquiry that *Bruen* envisioned. *See Reyna*, 2022 WL 17714376, at *4. For purposes of the *Bruen* analysis, the proposed conduct at issue here can be defined only as the sale and purchase of firearms, ammunition, and precursory parts on state property.

This Court's conclusion in *Teixeira v. County of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017), that there is no constitutional right to sell weapons under the Second Amendment, supports the conclusion that Plaintiffs' proposed conduct is not protected by the Second Amendment. Even Plaintiffs concede that this Court "consulted text, history, and tradition to hold that there is no independent right to

sell arms." AB 28. Although Plaintiffs suggest that *Teixiera* is no longer good law, that case did not engage in the type of means-end scrutiny that *Bruen* rejected, as Plaintiffs suggest. AB 28-29. Rather, *Teixeira*'s reasoning was "fully consistent with *Heller*" (873 F.3d at 687), and *Bruen* left *Heller* undisturbed. *Bruen*, 597 U.S. at 17 (describing the new analytical framework for Second Amendment claims as "[i]n keeping with *Heller*"). Because *Teixiera* is not "clearly irreconcilable" with *Bruen*, the Court should decline Plaintiffs' request to "overrule[]" *Teixiera*. *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018); *see also United States v. Kittson*, 2023 WL 5015812, at *2 (D. Or. Aug. 7, 2023) (holding that a pre-*Bruen* Ninth Circuit decision, which relied on *Heller* to hold that machineguns were not protected arms under the Second Amendment, was not clearly irreconcilable with *Bruen* and thus was binding).[4] And while *Teixeira* acknowledged that the Second Amendment implies some "ability to acquire arms," 873 F.3d at 677–78, Plaintiffs have not shown that the laws block them from being able to purchase firearms and ammunition, including at the numerous brick-and-mortar stores located near the Fairgrounds. OB 36; *see Gazzola v. Hochul*, 88 F.4th 186, 196-98 (2d Cir. 2023) (citing *Teixiera* in rejecting a Second Amendment

---

[4] The continued viability of *Teixeira* is additionally evident from post-*Bruen* district court decisions that have relied on its holdings. *See, e.g.*, *Hartford v. Ferguson*, 2023 WL 3836230, at *6 (W.D. Wash. June 6, 2023); *United States v. Flores*, 2023 WL 361868, at *4 (S.D. Tex. Jan. 23, 2023); *United States v. Tilotta*, 2022 WL 3924282, at *5 (S.D. Cal. Aug. 30, 2022).

18

challenge by firearms dealers to New York's commercial regulations on the sale of firearms and ammunition because "there is no evidence that New Yorkers currently lack, or will lack under the challenged statutes, relatively easy access to sellers of firearms").

### 2. The Challenged Laws Are Presumptively Lawful Qualifications on the Commercial Sale of Firearms

In any event, the challenged laws, which limit the *location* where firearms, ammunition, and precursor parts may be sold, are presumptively lawful because they merely "impos[e] conditions and qualifications on the commercial sale of arms." *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626); OB 38-39. Plaintiffs do not address this argument, and therefore have waived any response. *See* AB 25-29.

### 3. The Challenged Laws Are Consistent with Historical Firearm Regulations

Even if this Court were to assume that the conduct regulated by the challenged laws is constitutionally protected, the challenged laws are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. Plaintiffs' historical analysis is flawed because they mistakenly believe that the founding era is the only relevant time period. AB 31–33. Under the proper analytical framework, SB 264 and SB 915 fit comfortably within the government's

19

longstanding authority to regulate (1) conduct on its own property, (2) firearms commerce to promote public safety, and (3) firearms in sensitive places.

### a. The Relevant Historical Tradition is Not Limited to the Founding Era

When conducting the historical inquiry, Plaintiffs reject laws that predate the founding as "too early" and laws that postdate the founding as "too late." AB 33. Neither *Bruen* nor *Heller* employed such a rigid, Goldilocks-style analysis. The Supreme Court considered English history reaching back hundreds of years in *Heller*, *see, e.g.*, 554 U.S. at 592-594, as well as American history "from immediately after" 1791 "through the end of the 19th century," *id.* at 605. And *Bruen* confirmed that English traditions "long predat[ing]" the Second Amendment may "illuminate the scope of the right" if they "prevailed up to" 1791, and that post-ratification evidence can also help "settle the meaning" of the Constitution. 597 U.S. at 34-35. It is "implausible"—to say the least—"that the public understanding" of the right to bear arms "would arise" only in 1791, and equally "implausible" that it "would promptly dissipate whenever [the founding] era gave way to another." *Antonyuk v. Chiumento*, 89 F.4th 271, 304 (2d Cir. Dec. 8, 2023).

Plaintiffs' fixation on laws enacted only during the founding era is thus irreconcilable with *Bruen*.[5]

### b. The Government Has Long Regulated Conduct on Its Own Property

The government, when it operates as a proprietor, has the right to control conduct on its own land. Although Plaintiffs admit that "the government may have some authority to restrict activities on its own property," AB 32, they fail to properly apply that principle here.

First, Plaintiffs argue that the government's authority to regulate activities on its property "has long been circumscribed" by the First Amendment and Equal Protection Clause. AB 34. But as discussed, SB 264 and SB 915 do not violate the First Amendment or Equal Protection Clause. OB 15-30; *ante*, Arg. I.B-C.

Second, Plaintiffs misread the holdings in *Bonidy v. U.S. Postal Service*, 790 F.3d 1121 (10th Cir. 2015), and *United States v. Class*, 930 F.3d 460 (D.C. Cir. 2019). *Bonidy* and *Class*, when read in conjunction with the historical analogues cited in the opening brief, *see* OB 42-43, reinforce the principle that the government's status as a property owner confers a right to control conduct on its own land. *Bonidy*, 790 F.3d at 1126; *Class*, 930 F.3d at 464. Indeed, Plaintiffs

---

[5] And indeed, at least for a moment, Plaintiffs appear to recognize as much, conceding that "*Heller* and *Bruen* did examine limited evidence from the mid-to-late Nineteenth Century," which "confirm[s] the original public understanding of the Second Amendment in 1791." AB 32.

concede that "both circuits recognized that the government has some managerial authority to restrict the activities on its property." AB 36. Plaintiffs endeavor to distinguish these cases by arguing that SB 264 and SB 915 regulate firearms as items of commerce, not as items for self-defense, as in *Bonidy* and *Class*. *See id*. Yet they cite no authority concluding that such a distinction matters—and nothing about this historical tradition suggests that the government cannot regulate firearms in either context.

### c. The Government Has Historically Regulated Firearms Commerce to Promote Public Safety

Under *Bruen*, the government need only identify a "well-established and representative historical *analogue*"—not a "historical *twin*" or "dead ringer," *Bruen*, 597 U.S. at 30—yet Plaintiffs' analysis of historical regulations of firearms commerce ignores this standard, missing the proverbial forest for the trees. It cannot be reasonably disputed that there is a well-established tradition of regulating firearms commerce, including historical restrictions on where and to whom individuals could sell guns; storage and the sale of gunpowder; and shooting galleries. OB 44-50. Plaintiffs concede that early zoning and licensing regulations bear similarities to the challenged laws, AB 41, and that New Hampshire's 1825 law restricting the commercial sale of gunpowder on "any highway, or in any street, lane, or alley, or on any wharf, or on parade or common," 1825 N.H. Laws 74, § 5, renewed by 1891 N.H. Laws, at 332, ch. 117, § 7, is a "genuine historical

22

analogue[.]" AB 44. But they resist the conclusion that SB 264 and SB 915 fit within the historical tradition of regulation that those laws represent because, contrary to *Bruen*, they define the relevant time period too narrowly and mistakenly consider each analogue in isolation. *See Bruen*, 597 U.S. at 24, 28, 35.

Plaintiffs distinguish historical regulations on shooting galleries on the basis that they regulated where firearms were discharged, AB 41, and similarly dismiss historical gunpowder regulations because, unlike the challenged laws, they do not prohibit the sale of arms and were designed to prevent explosions and fires. AB 42. But *Bruen* does not require the State to identify historical analogues that are identical to the challenged laws. It requires only that such analogues are "relevantly similar," meaning that they "impose a comparable burden on the right of armed-self defense," which is "comparably justified." 597 U.S. at 29. The cited historical laws are all examples of government regulations on firearms commerce enacted to promote public safety, and they demonstrate that the government has traditionally had—and exercised—inherent police power to regulate firearms to address problems as they arise. *See* 2-ER-130–133, 135–155 (Decl. of Saul Cornell). With this backdrop, SB 264 and SB 915 fit well within a tradition of regulating firearms commerce. 1-ER-028.

Plaintiffs also argue that colonial regulations on the sale and purchase of firearms are "racist laws" that are "no legitimate analogue for modern day arm

23

bans." AB 38-39. Yet this Court has recognized that such laws "restrict[ed] [] the commercial sale of firearms." *Teixeira*, 873 F.3d at 685. And while such status-based laws, which would be unconstitutional today, are based on odious views and stereotypes, excluding them from consideration would distort the historical record.[6] Jacob D. Charles, *On Sordid Sources in Second Amendment Litigation*, Stan. L. Rev. Online 30, 37 (2023); *see also id*. at 31 ("Without a full picture of past laws—the prosaic and prejudiced alike—courts risk impermissibly narrowing the range of legislative options the ratifiers understood to be consistent with the right to keep and bear arms."); *United States v. Bartucci*, 658 F. Supp. 3d 794, 804 (E.D. Cal. 2023) (Regulations "are telling about what was understood as the scope of the Second Amendment during the period leading up to 1791[,]" even if classifications are appalling and unconstitutional today.). Such laws are relevant; like SB 264 and SB 915, they seek to regulate firearms commerce for the purpose of reducing the risk of illegal firearms commerce and trafficking.

---

[6] The State Defendants emphasize their strong disagreement with racial and other improper discrimination that existed in such laws, and which stand in stark contrast to California's commonsense firearm laws, designed to justly and equitably protect all Californians. The citing of such statutes should in no way be construed as an endorsement of such laws.

### d. The Supreme Court has Recognized Governmental Authority to Regulate Firearms in Sensitive Places

It is "settled" that, in "sensitive places," the government may enact restrictions on arms. *Bruen*, 597 U.S. at 30; *Heller*, 554 U.S. at 626. Although the Supreme Court acknowledged that there may be "relatively few 18th- and 19th-century" sensitive places laws, the Court had no difficulty finding that such restrictions are constitutional. *Bruen*, 597 U.S. at 30. Plaintiffs' assertion that many such laws were "adopted far too late" to be relevant here, AB 44, is thus at odds with *Bruen*.

Plaintiffs argue that sensitive places laws were adopted to minimize potential violent disruption of government functions when large groups of people gather, whereas SB 264 and SB 915 were adopted "to make a symbolic statement" about not profiting from the sales of guns. AB 45. They further allege that the challenged laws do not promote the same public safety concern as sensitive places laws because they do not ban the actual possession of arms. *Id*. But like their historical predecessors, SB 264 and SB 915 were adopted to protect the public welfare in locations where a large group of people gather—and thus are comparably justified.

Finally, Plaintiffs assert that the Fairgrounds is not a sensitive place because gun shows have taken place there for more than 30 years. AB 46. But gun show attendees are not allowed to bring firearms onto the Fairgrounds for self-defense

purposes; rather, firearms must be secured in a manner to prevent operation before an attendee may enter the show. Cal. Penal Code § 27340(b) ("All firearms carried onto the premises of a gun show or event by members of the public shall be checked, cleared of any ammunition, secured in a manner that prevents them from being operated, and an identification tag or sticker shall be attached to the firearm," prior to admittance). And like the facilities deemed sensitive in *Bonidy*, 790 F.3d at 1126 and *Class*, 930 F.3d at 464, the Fairgrounds is government property with indoor and outdoor spaces where large gatherings of people occur. Although Plaintiffs argue that such property is not a sensitive place because it is not a "court[], legislature[], [or] polling place[]," the Supreme Court has not limited sensitive places to those areas. AB 46. This Court has concluded otherwise. *Nordyke v. King*, 563 F.3d 439, 459 (9th Cir. 2009), *vacated on other grounds by* 611 F.3d 1015 (9th Cir. 2010) (fairgrounds property is a sensitive place); *see also Christopher v. Ramsey Cty.*, 621 F. Supp. 3d 972, 981 (D. Minn. Aug. 12, 2022) (state fair, where thousands of people gather, is a sensitive place).

## II. PLAINTIFFS HAVE NOT SATISFIED THE OTHER PRELIMINARY INJUNCTION FACTORS

Plaintiffs have not shown that they are likely to face irreparable harm without preliminary relief. As noted, plaintiffs may continue to participate in gun shows and promote gun culture on the OC Fairgrounds and state property consistent with SB 264 and 915. They may also engage in discussions about firearms and

26

firearms-related products, and may make offers for sale without violating the law. And they may continue to purchase lawful firearms and ammunition at any licensed firearms dealer's store—including stores within minutes of the Fairgrounds.  Plaintiffs allege irreparable harm solely based on an alleged violation of their constitutional rights, but as shown above, they have not shown that they are likely to prevail on any of their constitutional claims.  In contrast, California enacted SB 915 and SB 264 to address its compelling interest in thwarting illegal commerce and reducing gun violence.  OB 55–56.  And beyond that public interest, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).  Having failed to show that the equities weigh in their favor, Plaintiffs are not entitled to an injunction.

## CONCLUSION

The district court's decision granting Plaintiffs' motion for a preliminary injunction should be reversed.

Dated:  February 6, 2024          Respectfully submitted,


ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MATTHEW WISE
LARA HADDAD
Supervising Deputy Attorneys General

/s/ NICOLE J. KAU
NICOLE J. KAU
Deputy Attorney General
*Attorneys for Defendants-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**

I am the attorney or self-represented party.

**This brief contains _____ words,** including _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated          .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**                                    **Date**
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                               *Rev. 12/01/22*

# CERTIFICATE OF SERVICE

Case Name:   **B&L Productions, Inc., et al. v.**      Case    **23-3793**
              **Gavin Newsom, et al. [Appeal]**         No.    _____

I hereby certify that on <u>February 6, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE APPELLANT'S REPLY BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on February <u>6, 2023</u>, at Los Angeles, California.

| Kevin Carballo | *Kevin Carballo* |
|:---:|:---:|
| Declarant | Signature |

SA2023306200
POS.docx