Consolidated Case Nos. 23-55431 & 23-3793

In the United States Court of Appeals
for the Ninth Circuit

B & L PRODUCTIONS, INC., et al.,
*Plaintiffs-Appellants*,

V.

GAVIN NEWSOM,
in his official capacity as Governor of the State of California and in his personal
capacity, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of California
Case No. 3:21-cv-01718-AJB-DDL
Honorable Anthony J. Battaglia

GAVIN NEWSOM,
in his official capacity as Governor of the State of California and in his personal
capacity, et al.,
*Defendants- Appellants*,

V.

B & L PRODUCTIONS, INC., et al.,
*Plaintiffs- Appellees.*

On Appeal from the United States District Court
for the Southern District of California
Case No. 8:22-cv-01518-JWH-JDEx
Honorable John W. Holcomb

**APPELLANTS' MOTION TO STAY THE MANDATE**

C.D. Michel
Anna M. Barvir
Tiffany D. Cheuvront
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com

Donald Kilmer
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Rd.
Caldwell, Idaho 83607
(408) 264-8489
don@dklawoffice.com

*Attorneys for Plaintiffs-Appellants and Plaintiffs- Appellees*

September 5, 2024

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................. ii

Background ........................................................................................................... 2

Reasons for Granting a Stay ................................................................................. 5

I.     This Case Presents Substantial Questions That the Supreme Court Is Reasonably Likely to Take ........................................................................ 5

     A.    There Is a Reasonable Probability That the Supreme Court Will Grant Certiorari Because the Opinion Addresses Issues of Exceptional Importance ............................................................................................ 6

     B.    It Is Fairly Probable That This Court's Decision Will Be Reversed Because "Meaningful Constraint" Analysis Conflicts with the Supreme Court's Second Amendment Precedents ........................................... 7

     C.    It Is Fairly Probable That This Court's Decision Will Be Reversed Because It Conflicts with Even this Court's Own Commercial Speech Precedents ....................................................................................... 12

     D.    It Is Fairly Probable That This Court's Decision Will Be Reversed Because It Simply Ignores B&L's Equal Protection Claims in Conflict with Supreme Court Precedent .............................................. 16

II.    There Is Good Cause to Stay the Mandate ............................................... 17

Conclusion .......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Silvester v. Becerra,*
  583 U.S. 1139 (Feb. 20, 2018) ....................................................... 11

*B&L Prods., Inc., v. 22nd Dist. Agric. Ass'n,*
  394 F. Supp. 3d 1226 (S.D. Cal. 2019) ........................................... 14

*Bryant v. Ford Motor Co.,*
  886 F.2d 1526 (9th Cir. 1989) ........................................................... 5

*Cent. Hudson Gas & Elec. Comm'n v. Pub. Serv. Comm'n,*
  447 U.S. 557 (1980) ................................................................... 12, 13

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ....................................................................... 6, 9

*Doe v. United States,*
  419 F.3d 1058 (9th Cir. 2005) ......................................................... 10

*Elrod v. Burns,*
  427 U.S. 347 (1976) ......................................................................... 17

*Grosjean v. Am. Press Co.,*
  297 U.S. 233 (1936) ......................................................................... 16

*Hollingsworth v. Perry,*
  558 U.S. 183 (2010) ................................................................ 5, 6, 12

*Lorillard Tobacco v. Reilly,*
  533 U.S. 525 (2001) ........................................................................... 7

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n,*
  584 U.S. 617 (2018) ......................................................................... 16

*Melendres v. Arpaio,*
  695 F.3d 990 (9th Cir. 2012) ........................................................... 17

*Minn. Comm'r of Revenue,*
  460 U.S. 575 (1983) .................................................................... 16

*All. for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ................................................ 11, 12

*N.Y. State Rifle & Pistol Assoc. v. Bruen,*
  597 U.S. 1 (2022) .................................................................. 6, 8, 9

*Nordyke v. King,*
  681 F.3d 1041 (9th Cir. 2012) ............................................... 13, 14

*Nordyke v. Santa Clara Cnty.,*
  110 F.3d 707 (9th Cir. 1997) ............................................ 12, 13, 14

*Ortega v. Grisham,*
  2024 WL 3495314 (D.N.M. July 22, 2024) .................................. 6

*Rodriguez v. Robbins,*
  715 F.3d 1127 (9th Cir. 2013) .................................................... 18

*Romer v. Evans,*
  517 U.S. 620 (1996) .................................................................. 16

*United States v. Duarte,*
  108 F.4th 786 (9th Cir. 2024) ..................................................... 12

*United States v. Perez-Garcia,*
  2024 WL 4033086 (9th Cir. 2024) ............................................. 12

*United States v. Rahimi,*
  _ U.S. _, 144 S. Ct. 1889 (June 21, 2024) .................................... 6

*Whole Women's Health v. Hellerstedt,*
  579 U.S. 582 (2016) .................................................................... 9

**Statutes**

Cal. Penal Code § 26815 ................................................................ 14

Cal. Penal Code § 27200 .................................................................. 2

Cal. Penal Code § 27245 .................................................................................... 2

Cal. Penal Code § 27310 ...........................................................................2, 14, 15

Cal. Penal Code § 27540 .................................................................................. 14

Cal. Penal Code § 27573 .................................................................................... 3

Cal. Penal Code § 27540 .................................................................................. 14

**Rules**

Fed. R. App. P. 35 .............................................................................................. 1

Fed. R. App. P. 41 ......................................................................................... 1, 5

Fed. R. Civ. P. 52 .......................................................................................11, 15

Ninth Cir. Rule 41-1 ..................................................................................... 1, 5

**Other Authorities**

11A Charles Alan Wright et al.,
    Federal Practice and Procedure § 2948.1 (2d ed. 1995) ............................ 17

Under Rule 41(d) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 41-1, plaintiffs in this consolidated appeal, B&L Productions et al.,[1] respectfully move this Court to stay issuance of its mandate pending the filing and disposition of a timely petition for a writ of certiorari.

A stay is warranted because B&L's certiorari petition will present substantial questions arising from the panel's decision, and good cause exists for a stay. *See* Fed. R. App. P. 41(d)(2)(A). Indeed, the petition unquestionably will present substantial constitutional issues—including both recently decided and novel questions about the application of the First Amendment, Second Amendment, and Equal Protection Clause, as well as the intersection of all three. Fed. R. App. P. 35.

It is equally clear that there is good cause for a stay. If the mandate is issued and the Central District's preliminary injunction is lifted, tens of thousands of Californians will see the exercise of their fundamental rights irrevocably denied as long as this case proceeds. Preserving the status quo while the Supreme Court considers the weighty constitutional issues of this case will best serve the interests of orderly judicial review. But if this Court disagrees, it should, at a minimum, grant a brief administrative stay to give B&L time to seek interim relief from the Supreme Court.

B&L has conferred with counsel for the State. As of this filing, counsel for the State has not indicated whether they intend to oppose this motion.

---

[1] The plaintiffs were appellants in the Southern District case and appellees in the Central District case. For clarity, the plaintiffs are referred to collectively as "B&L" throughout.

1

# BACKGROUND

B&L Productions, Inc. has operated gun shows throughout California, including the Del Mar Fairgrounds and the Orange County Fair & Event Center, for more than 30 years. 1-ER-006.[2] Its gun shows bring together like-minded individuals "to engage in commerce related to, and necessary for, the lawful and regulated exercise of Second Amendment rights." 2-ER-244; 2-SER-335-79.

California strictly regulates commerce in firearms and ammunition. This is also true for sales at gun shows, where laws regulating commerce in arms are at their strictest. 1-ER-006-07. *See also* Cal. Penal Code §§ 27200-27245. Firearm transactions at gun shows must still comply with all laws governing the sale of firearms (including ten-day waiting periods before taking possession) and ammunition at permanent retail locations. Cal. Penal Code § 27310. In short, there is no "gun show loophole" in California.

Even so, California objects—because its policymakers object to the law-abiding gun culture—to hosting gun shows on public property and thus seeks to exclude them from the public square out of animus. The State thus adopted AB 893, amending the California Food & Agricultural Code to add section 4158, forbidding anyone to "contract for, authorize, or allow the sale of any firearm or ammunition on the property or in the buildings that comprise the Del Mar Fairgrounds." S.D.Cal.App. 2-ER-95, 252. SB 264 codified Penal Code section 27575, which bars any "officer, employee, operator, lessee, or licensee of the" 32nd DAA from "contract[ing] for, authoriz[ing], or allow[ing] the sale of any firearm, firearm precursor part, or ammunition on the

---

[2] Unless otherwise noted, record citations are to the Excerpts of Record in the Central District appeal.

property or in the building that comprise the OC Fair & Event Center." 1-ER-008. SB 915 expanded the law to cover *all* state-owned properties. 1-SER-152-53l; Cal. Penal Code § 27573.

Although the Challenged Statutes do not *expressly* "ban" gun shows, that is their stated goal. Before Judge Holcomb enjoined SB 264 and SB 915, B&L had been unable to schedule a single event at any state-owned property since before the laws took effect. 2-SER-339-41. The bills' legislative histories are clear; they were meant to end gun shows at all state-owned venues by removing the financial underpinning of such events. 2-ER-230-34, 38-41; 1-SER-117, 122-25, 130-31, 136-140, 145-48, 157-60, 165-66, 171-72, 175-77, 183-85. Senator Min, the sponsor of SB 264 and SB 915, stated that the ban "ensure[s] that the state is not profiting from the sale of firearms and ammunition on state property or facilitating gun shows that would undermine California's strong firearm regulations." 1-ER-008.

B&L sued in the Southern and Central Districts of California, alleging that the Challenged Statutes violate the First Amendment, Second Amendment, and Equal Protection Clause. 2-ER-242-305.

In the Southern District case, the trial court granted the State's motion to dismiss and entered judgment for the State. S.D.Cal.App.2-ER-33-37. In that court's view, AB 893 restricts only the exchange of money for firearms and related products at the fairgrounds. S.D.Cal.App.1-ER-8. That court also summarily dismissed B&L's allegations that banning the commercial sale of arms at the fairgrounds effectively bans gun shows at that venue. 1-ER-8. The court thus held that there was no First Amendment violation. S.D.Cal.App. 1-ER-8. On B&L's Second Amendment claim,

that court ruled that because B&L's ability to acquire or purchase firearms elsewhere was not eliminated, they had no claim. S.D.Cal.App.1-ER-10-11. As to the equal protection claim, the district court ruled (despite well-plead allegations) that B&L "failed to allege any facts showing that impermissible animus and viewpoint discrimination prompted the enactment of AB 893." S.D.Cal.App.1-ER-12.

In the Central District case, the court granted B&L's motion for preliminary injunction, finding that they were likely to succeed on all three claims. The Central District rejected the State's claim that, because "the act of exchanging money for a gun is not 'speech,'" the Challenged Statutes do not restrict speech. 1-ER-016. Instead, the court held that the Challenged Statutes "exceed the mere prohibition of 'exchanging money for a gun." 1-ER-016. The court then held that the laws unlawfully infringed on commercial speech and censored expressive conduct, 1-ER-014-19, and that the State was likely engaging in unlawful viewpoint discrimination, 1-ER-022-23. The Central District then held that the Challenged Statutes likely violate the Second Amendment, finding that the State had failed to meet its burden to prove that history supports an arbitrary ban on the sale of arms on public property. 1-ER-030. Finally, because the trial court found that B&L was likely to succeed on its viewpoint discrimination claims, it concluded they were also likely to prevail on its equal protection claims. 1-ER-30-31.

The three-judge panel heard the appeals together and consolidated them for decision. The panel affirmed the Southern District's dismissal and reversed the Central District's order granting preliminary injunction. B&L then timely petitioned for rehearing en banc. This Court denied B&L's en banc petition on August 30, 2024, and the mandate is scheduled to be issued on September 6, 2024.

## REASONS FOR GRANTING A STAY

Under Federal Rule of Appellate Procedure 41, "[a] party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court." Fed. R. App. P. 41(d)(1). To obtain such relief, the moving party "must show that the petition would present a substantial question and there is good cause for a stay." *Id.* This generally requires that the movant establish "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). Although a stay of the mandate pending petition to the Supreme Court is not necessarily "granted as a matter of course," *see* 9th Cir. R. 41-1, the movant "need not demonstrate that exceptional circumstances justify a stay." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989). Indeed, the comments to Circuit Rules confirm that a stay is only denied where the petition would be "frivolous or filed merely for delay." *See* 9th Cir. R. 41-1.

Applying these factors here, this Court should stay the mandate pending the filing of a petition for certiorari. If the Court disagrees, it should grant a 14-day administrative stay so that B&L may seek emergency relief.

## I.    THIS CASE PRESENTS SUBSTANTIAL QUESTIONS THAT THE SUPREME COURT IS REASONABLY LIKELY TO TAKE

The Supreme Court is likely to grant a certiorari petition when a United States Court of Appeals has "decided an important question of federal law that has not been, but should be, settled by th[e Supreme] Court, or has decided an important federal

question in a way that conflicts with relevant decisions of [the Supreme] Court." Sup. Ct. R. 10(c). Because the panel decision disposes of constitutional questions of exceptional importance, there is at least "a reasonable probability that four Justices will consider the issue[s] sufficiently meritorious to grant certiorari." *Hollingsworth*, 558 U.S. at 190. And because it does so in ways that conflict with the precedents of both this Court and the Supreme Court, there is more than a fair prospect that B&L will prevail.

### A. There Is a Reasonable Probability That the Supreme Court Will Grant Certiorari Because the Opinion Addresses Issues of Exceptional Importance

While B&L acknowledges that the panel concluded that California's gun show ban likely passes constitutional scrutiny, there can be no serious dispute that the constitutional questions at the heart of this case are substantial.

First, B&L's certiorari petition will ask the Supreme Court to clarify the application of its Second Amendment history-and-tradition test advanced in *District of Columbia v. Heller*, 554 U.S. 570 (2008), confirmed in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), and recently revisited in *United States v. Rahimi*, _ U.S. _, 144 S. Ct. 1889 (June 21, 2024). Specifically, B&L's petition will ask the Court to resolve the issue of what, if any, threshold finding must be made before the government must "prove that its firearms regulation is part of the historical tradition." *Id.* at 19. This question has perplexed courts and litigants since *Bruen* was decided. *See, e.g.*, *Ortega v. Grisham*, 2024 WL 3495314 (D.N.M. July 22, 2024) (upholding waiting period because purchasing a firearm is not covered by the "plain text"); Order Re Preliminary Injunction at 30, *Cal. Rifle & Pistol Assn. v. L.A. Cnty. Sheriff's Dept.*, No 23-cv-10169 (C.D. Cal. Aug. 20, 2024), ECF No. 52 (refusing to enjoin $900 concealed

carry license expenses because challengers had not detailed their proposed course of conduct, even though the city presented no history to justify its fees). This case represents an opportunity for the Court to provide some welcomed clarity.

Second, B&L's petition will present important First Amendment questions about commercial speech, including fundamental questions about the viability of the commercial speech doctrine that have been percolating for years. As Justice Thomas has remarked, "[T]here is no 'philosophical or historical basis for asserting that "commercial" speech is of "lower value" than "noncommercial" speech.' Indeed," he continued, "I doubt whether it is even possible to draw a coherent distinction between commercial and noncommercial speech." *Lorillard Tobacco v. Reilly*, 533 U.S. 525, 575 (2001) (Thomas, J., concurring). This case involves facts that illustrate well what Justice Thomas was contemplating.

Last, B&L's petition will raise important questions about the Equal Protection Clause and its application to cases involving unequal treatment driven by government animus and occurring in the context of the exercise of fundamental First and Second Amendment rights. These constitutional issues no doubt present substantial questions about government power and individual liberties, issues of exceptional importance that the Supreme Court is likely to review on certiorari.

**B.    It Is Fairly Probable That This Court's Decision Will Be Reversed Because "Meaningful Constraint" Analysis Conflicts with the Supreme Court's Second Amendment Precedents**

First, the opinion conflicts with the Supreme Court's modern Second Amendment jurisprudence, including its recent decision in *Bruen*. In no uncertain terms, the *Bruen* Court rejected the use of multi-step, interest-balancing tests to adjudicate

Second Amendment claims. 597 U.S. at 19. It made clear that the correct analysis begins and ends with the Second Amendment's text and history. *Id.* So, when faced with a Second Amendment claim, courts must first ask if the restricted conduct is within the Second Amendment's "plain text." *Id.* at 17, 24. If it is, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. That is the *Bruen* test, left undisturbed by *Rahimi*.

But instead of simply asking whether California's gun show ban restricts conduct within the Second Amendment's "plain text," as *Bruen* requires, the panel invented its *own* threshold burden. The panel's analysis demands that Second Amendment litigants first prove a "meaningful constraint" on their rights before the government must prove the regulation comports with our Nation's historical understanding. Op.18-19, 21-25. Much like the "severity of the burden" analysis that practically guaranteed no gun law would face strict scrutiny under the defunct two-step test, talk of "meaningful restraints" ensures that no government will face any burden at all unless this Court is convinced the constraint on protected conduct is sufficiently "meaningful."

This test finds no support in the Supreme Court's recent precedents, and it clashes with the explicit mandate set forth in *Bruen* just two years ago. When the Court abandoned the two-step test, it confirmed that "*Heller* and *McDonald* do not support applying means-ends scrutiny in the Second Amendment context" at all. *Bruen*, 597 U.S. at 19. It did not endorse a test that simply shifts means-end interest-balancing from "step two" of the defunct test to "step one" of a new test. Yet this Court's "meaningful constraint" analysis does exactly that. It is a thinly veiled balancing test, empowering

judges to decide for themselves whether the burden is really all that bad and "whether the right is really worth insisting upon." *See Heller*, 554 U.S. at 634-35. It has no place at the threshold—or at any other step—of the analysis under *Bruen*.

In fact, the panel's test strikes at the heart of the Supreme Court's modern Second Amendment jurisprudence. As the *Heller* Court explained:

> The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.

*Id.*; *see also Bruen*, 597 U.S. at 22-23. This departure from the Supreme Court's precedents about the treatment of the Second Amendment warrants certiorari.

Even if a "meaningful constraint" test were appropriate, B&L pleaded at least as much—notwithstanding this Court's extra-record finding that California's gun show ban imposes no such burden because, hypothetically, B&L's customers could obtain arms if they were being sold across the street. The decision lacks any objective analysis of what constitutes a "meaningful constraint" on the right to guide future courts' analyses, and it directly contradicts the record below.[3]

---

[3] Looking at abortion precedents, we find the "meaningful constraint" test's closest cousin—the "undue burden" test. The most thorough discussion of the "undue burden" test is found in *Whole Women's Health v. Hellerstedt*, 579 U.S. 582 (2016). There, the Supreme Court listed 15 data points courts must balance to analyze whether a law imposes a meaningful constraint or undue burden on a woman's right to obtain an abortion. *Id.* at 593-95. The list included such factors as how many people the regulations impact, the reduction in locations to exercise rights, the distance people must travel to access the right, whether the regulation addresses public safety and lowers risks, and the cost of compliance. *Id.*

The Southern District appeal is before this Court after a Rule 12 dismissal. No evidence was taken in the proceedings below, and at this posture, the courts must construe the complaint "in the light most favorable to the plaintiffs, taking all allegations as true, and drawing all reasonable inferences from the complaint in [their] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). This includes B&L's allegations that the defendants refused to contract with B&L to host gun shows at the Del Mar Fairgrounds after AB 893 became law and that B&L could find no adequate private venue to host its events because the fairgrounds is a one-of-a-kind facility with no comparable venue in the region. S.D.Cal.App.2-ER-174-75. It also includes allegations that many (perhaps most) of the people who attend gun shows are there to engage in commerce with firearm retailers that they cannot access anywhere else. S.D.Cal.App.2-ER-158. The Southern District perfunctorily performed the forbidden "meaningful constraint" test, ignoring the presumed-true allegations of the operative complaint and avoiding any discussion of the factors that might establish a "meaningful constraint." *See, e.g.*, *supra* n.3. Instead, the court simply cited B&L's perceived failure to state a claim that California's gun show ban "impedes Plaintiffs from acquiring or purchasing firearms or ammunition *altogether,* **amounting to a prohibition of that right**." S.D.Cal.App.2-ER-11 (double emphasis added).

Contrast this with the supplemental *Bruen* briefing and full hearing Judge Holcomb conducted in the Central District case before granting B&L's request for a preliminary injunction. Judge Holcomb made a threshold finding that the Challenged Statutes burden Second Amendment rights under his "*Bruen* Step-One Analysis." 1-ER-21-24. He was the only judge authorized to make findings of fact outside the operative

complaints, and to date, he is the only judicial officer who has done so. His factual findings can be disturbed only upon a showing of clear error, Fed. R. Civ. P. 52(a)(6), and his conclusions of law must be accorded substantial deference and only reversed on appeal for abuse of discretion, *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

This Court's failure to reconcile Judge Holcomb's meticulous and presumptively correct factual findings is itself clear error. Indeed, it is the same error that Justice Thomas observed in his dissent from the denial of certiorari in *Silvester*: "[The Ninth Circuit] upheld California's 10-day waiting period for firearms based solely on its own "common sense." (Citation omitted.) It did so without requiring California to submit relevant evidence,… and without acknowledging the District Court's factual findings. This deferential analysis was indistinguishable from rational-basis review." *Silvester v. Becerra*, 583 U.S. 1139, 1140 (Feb. 20, 2018) (Thomas, J., dissenting).

> [T]he Ninth Circuit ignored several ordinary principles of appellate review. While rational-basis review "is not subject to courtroom factfinding," (citation omitted), intermediate scrutiny is. And here, the District Court … made several findings of fact. The Ninth Circuit was supposed to review those findings for clear error. See Fed. Rule Civ. Proc. 52(a)(6). Yet the Ninth Circuit barely mentioned them. And it never explained why it had the "definite and firm conviction" that they were wrong.

*Id.* at 1147.

To paraphrase Justice Thomas: this Court's "deviation from ordinary principles of law is unfortunate, though not surprising. Its dismissive treatment of petitioners' challenge is emblematic of a larger trend…," one of "resisting th[e] Court's decisions

in *Heller* and *McDonald*" and "failing to protect the Second Amendment to the same extent that they protect other constitutional rights." *Id.* at 1147-48. *See also United States v. Perez-Garcia*, 2024 WL 4033086, *7 (9th Cir. 2024) (VanDyke, J., dissenting) (quoting *United States v. Duarte*, 108 F.4th 786, 788 (9th Cir. 2024) (VanDyke, J., dissenting) ("The observation I have made repeatedly in cases like this keeps being validated: our circuit is 'more interested in sidestepping than following the [Supreme] Court's Second Amendment precedent' by 'latch[ing] onto phrases' and 'conveniently overlooking such bothersome details like the government's burden of supplying relevantly similar historical analogues.'"). It is reasonable to predict that at least four sitting Justices will consider this repeated "deviation from ordinary principles of law" "sufficiently meritorious to grant certiorari." *Hollingsworth*, 558 U.S. at 190.

## C. It Is Fairly Probable That This Court's Decision Will Be Reversed Because It Conflicts with Even this Court's Own Commercial Speech Precedents

This Court's decision also conflicts with well-established commercial speech precedents, including this circuit's own cases regulating commercial speech at gun shows. *See Cent. Hudson Gas & Elec. Comm'n v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980); *Nordyke v. Santa Clara Cnty.* ("*Nordyke 1997*"), 110 F.3d 707 (9th Cir. 1997). It holds that speech constituting an "acceptance" in contract formation, negotiation, and sale consummation is *categorically unprotected* by the commercial speech doctrine. Op.13-14. And it finds that a ban on firearm "sales" at gun shows on state property, *but not gun shows themselves*, survives constitutional scrutiny, Op.11-20, even though *Nordyke 1997* held that such a restriction does not directly advance the government's purported interest. This defies common sense and circuit precedent.

12

Commercial speech receives First Amendment protection if it is not misleading and concerns lawful activity. *Cent. Hudson*, 447 U.S. at 563-64. Burdens on such speech are constitutional *only* if they directly advance a substantial government interest and are not broader than necessary to serve that interest. *Id.* at 564. California's gun show ban is *far* broader than necessary. Instead of simply enforcing California's laws regulating the sales of lawful products without restricting speech, the challenged laws ban sales of all firearms, ammunition, and firearm parts on public property—and the commercial speech associated with such sales. We've been here before.

In 1995, Santa Clara Couty tried to ban gun shows through a lease provision banning the sale, *but not possession*, of firearms at its fairgrounds. This Court held that a ban on the "sale" of firearms was overbroad because it abridged commercial speech associated with the sale of lawful products. *Nordyke 1997*, 110 F.3d at 713. Further, because the ordinance was "not a ban on gun shows ... it merely reflect[ed] certain concerns about the proliferation of guns and their use in the commission of crimes, while permitting the continuation of gun shows." *Id.* at 713. It "achieves nothing in the way of curtailing the overall possession of guns," and thus did not directly advance the government interest. *Id.* Next, Alameda County banned possession—but not sales—of guns at gun shows. After more than a decade of litigation, the county agreed to allow "properly secured" guns as commercial products at gun shows. *Nordyke v. King*, 681 F.3d 1041, 1045-46 (9th Cir. 2012). Since gun sales were never forbidden, the gun shows resumed. *Nordyke v. King*, 681 F.3d at 1045-46. Most recently, the 22nd DAA imposed a moratorium on gun shows at the Del Mar Fairgrounds. The moratorium was struck

13

down on First Amendment and equal protection grounds. *B&L Prods., Inc., v. 22nd Dist. Agric. Ass'n*, 394 F. Supp. 3d 1226, 1249 (S.D. Cal. 2019).

Now, California is outlawing sales—but not possession—of guns on public property. This is a clone of *Nordyke 1997*. The analysis must thus begin with what is already settled law in this circuit: California may not ban the sale of otherwise lawful firearms (and ammunition) at gun shows held at fairgrounds that are open for public use. *Id.* at 710. The only new wrinkle is the Supreme Court's Second Amendment jurisprudence and its directive to analyze Second Amendment claims under the doctrines articulated in *Bruen*, which necessarily forms part of the *Central Hudson* analysis of truthful commercial speech about lawful products.

Despite these precedents, this Court upheld the Challenged Statutes, taking the unprecedented step of declaring that communicating an "acceptance" as part of a contract for the sale of a lawful product may be banned on public property. Op.13-14. Of course, the mere act of "exchanging a gun for money" is not speech. *Nordyke 1997*, 110 F.3d at 710. But exchanging a gun for money at a gun show is *already* forbidden in California because all firearms sales are subject to a 10-day waiting period and a background check. Cal. Penal Code §§ 26815, 27540. This is true no matter where the transaction is initiated.[4] As Judge Holcomb observed, the challenged laws must, at a minimum, "implicate commercial speech by restricting the sale of otherwise legal firearms at the [OC] Fairgrounds." 1-ER-016. Otherwise, at least as to firearm sales, the

---

[4] Cal. Penal Code § 27310 (transfers at gun shows must comply with state and federal law); *id.* § 26805 (transfer at any location except the dealer's licensed premises is prohibited, but the dealer may prepare documents at a gun show); *id.* § 27545 (all arms transactions must be processed through a licensed dealer).

challenged laws would do nothing at all. That is because, even without the laws, "sales made at California gun shows must be completed both temporally and physically removed from the show itself." 1-ER-016.

The panel opinion rejected the Central District's factual findings on this point, substituting its own factual finding in violation of Rule 52(a)(6). Moreover, this Court's opinion conflicts with *Nordyke 1997*, which protects the "sale" of lawful firearms at gun shows—conduct that necessarily includes the speech required to communicate offer *and acceptance*. This Court's novel doctrine of commercial speech where "offers" are protected under the First Amendment, but an "acceptance" is not, just creates more legal controversy and invites more litigation. Indeed, the opinion is far from clear about what speech or conduct is permissible under the challenged laws and what is not. Can gun dealers accept a deposit or down payment on a future sale? What about layaway?[5] Finally, having held that the challenged laws do not ban gun shows but restrict only "acceptance" of gun sales, the opinion flouts *Nordyke 1997*'s holding that a ban on "sales," but not gun shows, does not directly advance the government's purported public safety interest. *Id.* B&L's certiorari petition will no doubt present substantial questions about the First Amendment commercial speech doctrine that even this Court has had difficulty uniformly deciding.

---

[5] These questions are key because the gun show ban imposes personal liability on venue staff, who must interpret the law for themselves to decide whether the intended conduct violates the law and, consequently, whether they will contract with B&L and other promoters to hold gun shows. Both California and this Court cynically profess that they are not banning gun shows, only gun sales. But this just invites the question: If gun dealers promise to accept only down payments and layaway for guns and then wait 10 days for the full cash price when they deliver the gun in accordance with state law, will Fairgrounds employees then enter into contracts for gun shows?

### D. It Is Fairly Probable That This Court's Decision Will Be Reversed Because It Simply Ignores B&L's Equal Protection Claims in Conflict with Supreme Court Precedent

Finally, the decision conflicts with Supreme Court precedent when animus results in the unequal treatment of groups in similar circumstances. Supreme Court precedent holds that *both* the Equal Protection Clause *and* the First Amendment forbid the government from granting "the use of a forum to people whose views it finds acceptable but deny[ing] use to those wishing to express less favored or more controversial views." *Police Dep't of the City of Chic. v. Mosley*, 408 U.S. 92, 95-96 (1972). Furthermore, if unequal treatment occurs in the context of exercising a fundamental right *or* the government is motivated by animus toward a disfavored group, courts should apply heightened scrutiny. *See Grosjean v. Am. Press Co.*, 297 U.S. 233 (1936); *Minn. Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575 (1983); *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 584 U.S. 617 (2018); *Romer v. Evans*, 517 U.S. 620 (1996).

The business model of gun shows is a case study in exercising rights under the First and Second Amendments, and the operative complaint contains ample, legally sufficient allegations of California's animus toward B&L and its activities. Indeed, B&L alleged that it had been excluded from a public forum. It detailed previous attempts to exclude them from that space. 2-ER-277-81; S.D.Cal.2-ER-158-66. It also alleged that its gun shows were targeted for disfavored treatment out of government animus for gun culture. Indeed, California's hostility to all things connected to the Second Amendment was well-pleaded and documented on the record in both cases. *See, e.g.*, 2-

ER-095, 258; S.D.Cal.2-ER-166-71. This Court's refusal to even address B&L's animus claim is inconsistent with Supreme Court precedent and warrants certiorari.

****

For these reasons, there is—at least—reasonable probability that the Supreme Court will grant certiorari and a fair prospect that Appellees will prevail if it does. Appellees' petition will thus present "substantial questions," making a stay of the mandate appropriate.

## II.  THERE IS GOOD CAUSE TO STAY THE MANDATE

Good cause plainly supports staying the mandate while B&L pursues Supreme Court review. Gun show events have taken place on California-owned properties, including the Orange County Fair & Event Center ("OCFEC"), for generations without causing any discernable harm to the surrounding communities. They paused—momentarily—during COVID and then upon the passage of Senate Bill 264 in 2021 before the Central District enjoined the ban at OCFEC and throughout the state. That injunction has been in place for nearly a year and, in reliance on it, B&L has entered into agreements with OCFEC, its exhibitors, and other vendors to produce the events in November 2024 and beyond. Upending the preliminary injunction now—before the Supreme Court has had a chance to consider the important constitutional questions this case presents—will do nothing but irrevocably deny thousands of Californians their rights under the First Amendment, Second Amendment, and Equal Protection Clause while this case proceeds. This unquestionably constitutes an irreparable injury. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d

ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). And it is more than good cause to stay the mandate.

On the other hand, no countervailing interest warrants changing the status quo at this stage. For the state "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). To be sure, the State may have a public safety interest in preventing "gun violence." But enforcement of the challenged laws does not serve those interests in any meaningful (or appropriately tailored) way— particularly because the State can readily further such goals by enforcing existing laws directly regulating gun show events on public property as it has for decades.

## CONCLUSION

For these reasons, the Court should grant Appellees' motion for a stay of the mandate pending the filing and disposition of Appellees' petition for writ of certiorari. Alternatively, if the Court is unwilling to stay the mandate pending the filing of the B&L's certiorari petition, B&L asks the Court to grant a 14-day administrative stay so that the Appellees may seek emergency relief from the Supreme Court.

Date: September 5, 2024      **MICHEL & ASSOCIATES, P.C.**

s/ Anna M. Barvir
Anna M. Barvir
*Attorneys for Plaintiffs-Appellants B&L Productions, Inc., dba Crossroads of the West; Barry Bardack; Ronald J. Diaz, Sr.; John Dupree; Christopher Irick; Robert Solis; Lawrence Michael Walsh; Captain Jon's Lockers, LLC; L.A.X. Firing Range, Inc., dba LAX*

*Ammo; California Rifle & Pistol Association, Inc.; South Bay Rod and Gun Club, Inc.*

Date: September 5, 2024      **LAW OFFICES OF DONALD KILMER, APC.**

s/ Donald Kilmer
Donald Kilmer
*Attorney for Plaintiff-Appellant Second Amendment Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2024, an electronic PDF of APPELLANTS' MOTION TO STAY THE MANDATE was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Date:  September 5, 2024

s/ Anna M. Barvir
Anna M. Barvir